**Bruce TURNER, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 14–93–00297–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

June 15, 1995.

---

768

Mary Moore, Houston, for appellant.

Mike Fields, Houston, for appellee.

Before YATES, FOWLER and CANNON *, JJ.

## OPINION

FOWLER, Justice.

Appellant was charged with the offense of unlawfully carrying a handgun. TEX.PENAL CODE ANN. § 46.02 (Vernon 1989).[1] After the trial court denied his Motion to Suppress, appellant pled guilty and the trial court sentenced him to four days in jail and assessed a $400 fine. Appellant appeals the trial court's denial of his motion on two grounds: (1) the offense of carrying a handgun is not one which justifies a warrantless citizen's arrest, and (2) a private citizen does not have authority to make an investigatory detention. We find that, under the circumstances of this

---

* The Honorable Bill Cannon, retired, sitting by assignment.

1. The Penal Code was revised effective September 1, 1994, after appellant committed the crime. See Acts 1993, 73rd Leg., ch. 900, § 1.18(b). Therefore, all references are to the code in effect at the time the crime was committed.

case, carrying a handgun was a breach of the peace which justified a warrantless citizen's arrest by a security guard, and that appellant was not detained, but arrested. Therefore, we affirm.

## FACTS

Charles J. Creel is a commissioned security guard for an apartment complex. The complex has recently had problems with drug dealing and car theft, and Creel's duties include watching for activity in the complex consistent with these problems. Creel knows most of the complex's residents and their apartment numbers.

One night, Creel saw a car containing four men turn into the complex and drive very slowly through the complex. Because he did not recognize the car, he was suspicious and kept an eye on the car. The car backed into a parking space, which Creel said he recognized as the way car thieves and drug dealers park so they can get away quickly. He saw two men get out of the car and start walking through the complex. He stopped them and asked what they were doing. They said they were going to visit a woman, and gave a name Creel did not recognize, and an apartment number Creel knew was vacant. When he asked them if they had gotten out of the car, they lied and said "no."

Another security officer arrived, and the two officers escorted the men back to the car. As Creel approached the car, he saw appellant, who was in the car, "messing around with his lap." When appellant saw the security officers, he raised a blue steel semiautomatic pistol and put it into the glove compartment of the car. The security officers made the other two men get out of the car, patted them down for weapons, obtained identification, and called the sheriff's department. Appellant was charged with unlawfully carrying a handgun.

## PRIOR POSTURE

Appellant filed a pretrial Motion to Suppress Evidence, claiming that he was arrested or detained without probable cause or

reasonable suspicion, and that the weapon was seized as a result of illegal police conduct. The trial court held a hearing, and heard the testimony of Charles Creel, the only witness, and the arguments of counsel. The judge denied the motion to suppress. Appellant later pled guilty, and the judge sentenced him to four days in jail and assessed a $400 fine. Appellant filed a timely notice of appeal, complying with Tex.R.App.P. 40(b)(1).

## DISCUSSION

On appeal, appellant contends first that his arrest was unlawful because Creel, a private citizen,[2] could not arrest him for possession of a handgun, because it is neither a felony nor a breach of the peace. Next, appellant contends his detention was unlawful because Creel, as a private citizen, could not hold him under an investigatory detention.

■ The trial judge is the sole factfinder at a hearing on a motion to suppress evidence. *Alvarado v. State*, 853 S.W.2d 17, 23 (Tex.Crim.App.1993); *Johnson v. State*, 803 S.W.2d 272, 287 (Tex.Crim.App.1990). The trial judge's findings should not be disturbed on appeal absent a clear abuse of discretion. *Alvarado*, 853 S.W.2d at 23. Thus, we affirm the trial court's findings if they are supported by the record. *Johnson*, 803 S.W.2d at 287.

■ A private citizen may *arrest* someone without a warrant when the offense is committed in his presence, or within his view, if the offense is either a felony or *an offense against the public peace*. Tex.Code Crim. Proc.Ann. art. 14.01(a) (Vernon 1977) (emphasis added). Generally, carrying a handgun is a misdemeanor. Tex.Penal Code Ann. § 46.02 (Vernon 1989). Thus, under appellant's points of error, we must determine first whether Creel arrested or detained appellant, and second, if appellant's possessing a handgun was a breach of the peace under the circumstances of this case.

---

2. Creel admits he is not a "peace officer" as defined by the penal code or the code of criminal procedure. *See* Tex.Penal Code Ann. § 1.07(a)(36) (Vernon 1994); Tex.Code Crim.Proc.Ann. art. 2.12 (Vernon Supp.1995). He is, therefore, a private citizen.

### 1. Did Creel arrest appellant?

An "arrest" occurs when a person's liberty of movement is restricted or restrained. *Amores v. State,* 816 S.W.2d 407, 411 (Tex.Crim.App.1991); *Hardinge v. State,* 500 S.W.2d 870, 873 (Tex.Crim.App.1973). In *Amores,* the court found appellant was arrested when the police officer blocked the appellant's car with his patrol car, pulled out his revolver, and ordered the appellant out of the car. *Amores,* 816 S.W.2d at 410. In *Hardinge,* the court held the appellant was arrested when a security guard "held" the appellant for the police. *Hardinge,* 500 S.W.2d at 873. *See also Romo v. State,* 577 S.W.2d 251, 253 (Tex.Crim.App. [Panel Op.] 1979) (finding defendant was arrested when citizen took defendant's driver's license and held him until state trooper arrived).

Here, two armed security guards compelled all of the men to get out of the car, took the gun from the glove box, patted the men down for other weapons, took their identification, questioned them further, and called the sheriff's office. The guards then held the men there until the sheriff's deputy arrived. This most certainly was an arrest, as clearly the men were not free to go. The trial court also characterized the incident as a "pseudo citizen arrest," because the "citizen" was a security guard. Because this finding is supported by the record, it should not be disturbed on appeal. *Johnson,* 803 S.W.2d at 287.

### 2. Can possession of a handgun be a breach of the peace?

This is a case of first impression. There is no statute creating the offense of "breach of the peace." *Henderson v. State,* 600 S.W.2d 788, 789 (Tex.Crim.App. [Panel Op.] 1979). The common law definition generally accepted is taken from the opinion of the Texas Court of Criminal Appeals in *Woods v. State,* 152 Tex.Crim. 338, 213 S.W.2d 685, 687 (1948):

> The term "breach of the peace" is generic, and includes all violations of the public peace and order, or decorum; in other words, it signifies the offense of disturbing the public peace or tranquility enjoyed by the citizens of a community; a disturbance of the public tranquility by *any act or conduct inciting to violence* or tending to provoke or excite others to break the peace; a disturbance of public order by an act of violence or by *an act likely to produce violence, or which, by causing consternation and alarm disturbs the peace and quiet of the community.* By "peace," as used in this connection, is meant the tranquility enjoyed by the citizens of a municipality or a community where good order reigns among its members....
>
> The offense may consist of acts of public turbulence or indecorum in violation of the common peace and quiet, of an invasion of the security and protection which the laws afford to every citizen, or of acts such as tend to excite violent resentment or to provoke or excite others to break the peace. *Actual or threatened violence is an essential element of a breach of the peace. Either one is sufficient to constitute the offense.* Accordingly, *where means which cause disquiet and disorder, and which threaten danger and disaster to the community, are used, it amounts to a breach of the peace, although no actual personal violence is employed.* Where the incitement of terror or *fear of personal violence is a necessary element,* the conduct or language of a wrongdoer must be of a character to induce such a condition in a person of ordinary firmness.

*Woods,* 213 S.W.2d at 687 (quoting *Head v. State,* 131 Tex.Crim. 96, 96 S.W.2d 981, 982 (1936)) (emphasis added). The determination of whether an act amounts to a breach of the peace is done on a case-by-case basis, looking to the facts and circumstances surrounding the act. *Woods,* 213 S.W.2d at 687; *see also Crowley v. State,* 842 S.W.2d 701, 704 (Tex.App.—Houston [1st Dist.] 1992, no pet.); *Estes v. State,* 660 S.W.2d 873, 875 (Tex.App.—Fort Worth 1983, pet. ref'd) (both analyzing whether an offense was a breach of the peace under the attendant circumstances).

The majority of cases dealing with a citizen's arrest involve intoxicated persons, i.e. the offender is drunk and disorderly. *See, e.g., Romo v. State,* 577 S.W.2d 251, 253 (Tex.Crim.App. [Panel Op.] 1979) (holding

patrol officer out of his jurisdiction was a "citizen" who could arrest DWI offender for breach of the peace). However, Texas courts have found a breach of the peace in less egregious circumstances than are present in this case. For instance, the First Court of Appeals found that the failure to stop and give information after a traffic accident was a breach of the peace, given the number of traffic-related incidents that lead to violence in Harris County. *Crowley v. State*, 842 S.W.2d 701, 704 (Tex.App.—Houston [1st Dist.] 1992, no pet.). *Under the circumstances*, Crowley committed a breach of the peace, because her conduct was "likely to arouse violent resentment." *Id.* (emphasis added).

The Amarillo Court of Appeals found a breach of the peace when a private citizen attempted to arrest a man he knew had committed a robbery, and the robber threw a beer bottle in his attempt to escape. *Knot v. State*, 853 S.W.2d 802, 805 (Tex.App.—Amarillo 1993, no pet.). Likewise, in analyzing the circumstances of the incident, the Fort Worth Court of Appeals found a breach of the peace when a high school student "extend[ed] the middle finger of his right hand" to the principal of his school during commencement exercises. *Estes v. State*, 660 S.W.2d 873, 875 (Tex.App.—Fort Worth 1983, pet.ref'd).

■ Here, after hearing all the evidence at the motion hearing, the trial judge stated:

Found [sic] a definition for breach of the peace. It says, a breach of the peace includes all violations of public peace, order, or decorum. . . . It will be an outburst that disturbs the public peace or tranquility, or *something that would cause consternation and alarm*, disturbing the peace and quite [sic] of the community.

And by peace is meant the tranquility enjoyed by citizens of a municipality and good order among its members.

*I can't think of anything that would cause me more consternation than finding some character sitting in a parking lot with [a] .38 caliber on his lap* [emphasis added].

Under the circumstances of this case, we cannot say the trial judge erred in reaching this conclusion. It was night, the complex had previous incidents of criminal activity, the men acted in a suspicious manner, the men gave Creel a bogus name and apartment number, and the men lied to Creel when confronted. The sight of someone holding a handgun under these circumstances would lead one (and did lead Creel) to the conclusion that violence or danger is threatened, and would certainly induce "disquiet and disorder [or] terror or fear . . . and threaten danger . . . in a person of ordinary firmness." *Woods*, 213 S.W.2d at 687. Thus, when we review all the attendant circumstances, we find that appellant was guilty of a breach of the peace, and Creel could legally arrest him without a warrant. Appellant's first point of error is overruled.

### 3. Was appellant illegally detained?

■ Having determined that Creel lawfully *arrested* appellant, it is unnecessary to address appellant's second point of error, in which he raises the issue of the legality of an investigatory detention by a private citizen. However, appellant cites a case which he claims stands for the rule that an offender cannot be held for the police. *See Rodriguez v. State*, 146 Tex.Crim. 206, 172 S.W.2d 502 (Tex.Crim.App.1943). He also cites *Woods* for the same proposition. In reality, these cases state the rule that a private citizen may not see an offense and then *later* pursue the guilty party in order to apprehend him for the police. The right of a private individual to arrest someone is "limited to the time the offense is committed or while there is continuing danger of its renewal." *Woods*, 213 S.W.2d at 688. In other words, a private person may make a citizen's arrest only at the time he sees the actual offense being committed.

■ Here, Creel saw appellant holding the gun and placing it in the car's glove compartment. Thus, there was no intervening time between Creel's observing the offense and his arresting appellant, and there was a continuing danger that appellant would take the gun out of the glove compartment and use it. Creel was therefore justified in placing appellant under a citizen's arrest.

Appellant also cites several cases which state that a private citizen may not make a "*Terry* stop."[3] *See Hill v. State,* 641 S.W.2d 543, 544 (Tex.Crim.App.1982); *Irvin v. State,* 563 S.W.2d 920, 923–24 (Tex.Crim.App.1978); *Garner v. State,* 779 S.W.2d 498, 501 (Tex. App.—Fort Worth 1989, no pet.). These cases basically hold what we stated above: a citizen must see an offense being committed in order to arrest the offender. In this case, however, we have no need to address the issue of whether a citizen may detain a suspect on reasonable suspicion, because appellant was not detained, but arrested. Furthermore, Creel observed the offense being committed and thus had probable cause to arrest appellant. Appellant's second point of error is overruled.

Because Creel legally arrested appellant, the trial court did not err in denying appellant's motion to suppress, and the judgment of the trial court is AFFIRMED.

**3.** *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20    L.Ed.2d 889 (1968).